Mark L. Javitch (CA SBN 323729)
Javitch Law Office
480 S. Ellsworth Ave
San Mateo, CA 94401
Telephone: 650-781-8000
Facsimile: 650-648-0705
mark@javitchlawoffice.com
*Attorney for Plaintiff*
and the Putative Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JOANNA CHENG, individually and on behalf of all others similarly situated | Case No.:  3:19-cv-02352-JD |
| Plaintiff, | SECOND AMENDED CLASS ACTION COMPLAINT |
| v. | JURY TRIAL DEMANDED |
| ALL STAR GENERAL INSURANCE AGENCY, INC., a California corporation, FREEWAY INSURANCE SERVICES, INC., a California corporation, SACRAMENTO AUTO INSURANCE CENTER, INC., a California corporation, MANAGED CARE, INC. d/b/a GALAXY HEALTH NETWORK, an unknown business entity, AMERICAN WORKERS INSURANCE SERVICES, INC., a Texas corporation, JOHN DOE 1, an unknown business entity | |
| Defendants. | |

**SECOND AMENDED CLASS ACTION COMPLAINT**

1. Plaintiff JOANNA CHENG ("Plaintiff") brings this Second Amended Class Action Complaint and Demand for Jury Trial against Defendant ALL STAR GENERAL INSURANCE AGENCY INC. d/b/a STONEWOODINSURANCE.COM, Defendant FREEWAY INSURANCE SERVICES, INC., Defendant SACRAMENTO AUTO INSURANCE CENTER, INC., Defendant

1

MANAGED CARE, INC. d/b/a GALAXY HEALTH NETWORK, Defendant AMERICAN WORKERS INSURANCE SERVICES, INC., and Defendant JOHN DOE 1 (together, "Defendants") to stop their illegal practice of making unauthorized calls that play prerecorded voice messages to the telephones of consumers nationwide, and to obtain redress for all persons injured by their conduct. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorney.

## NATURE OF THE ACTION

2.      Defendants sell and provide insurance policies to consumers. As a primary part of their marketing efforts, Defendants and their agents placed thousands of automated calls employing a prerecorded voice message to consumers' cell phones nationwide.

3.      In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.  Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted) ("the FCC Letter").

4.      The people who were forced to endure Defendants' intrusion on the sovereignty of their phones had not given Defendants their express consent and, therefore, Defendants are in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

5.      Congress enacted the TCPA in 1991 to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not

only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

6.      To illustrate the scope and scale of the problem facing America, it is estimated that there were over 47 billion robocalls placed in 2018, and 29 billion placed in just the first half of 2019.

7.      Robocallers can repeatedly and blatantly violate federal law because their calls are made anonymously. They are so hard to track down that they are rarely caught, so robocall volumes have continued to rise.

8.      Most of the perpetrators are never identified because of the way companies structure their business and outsource their robocalling to third parties who offer a shield from scrutiny.

9.      This strategy enables Defendants to accept the revenue generated by mass robocalling while pointing out to the court that they do not even "make" phone calls.

10.     But this is the rare case where Plaintiff spent the time and effort needed to identify the wrongdoers.

11.     Plaintiff was able to identify the specific products being marketed via robocalls by purchasing the products offered and obtaining documentary evidence.

12.     Accordingly, the TCPA targets unauthorized calls exactly like the ones alleged in this case, based on use of technological equipment to spam consumers with Defendants' advertisements on a grand scale.

13.     By placing the calls at issue, Defendants have violated the privacy and statutory rights of Plaintiff and the Class.

SECOND AMENDED COMPLAINT

3:19-cv-02352-JD

14.     Plaintiff therefore seeks an injunction requiring Defendants to stop their unconsented calling, as well as an award of statutory and punitive damages to the Class members, together with costs and reasonable attorneys' fees.

## PARTIES

15.     Plaintiff JOANNA CHENG is a natural person and is a citizen of the Northern District of California.

16.     Defendant ALL STAR GENERAL INSURANCE AGENCY, INC. ("All Star") is a corporation organizing and existing under the laws of the State of California with its principal place of business at 7711 Center Avenue, Suite 200, Huntington Beach, California 92647.

17.     Defendant FREEWAY INSURANCE SERVICES, INC. ("Freeway") is a corporation organizing and existing under the laws of the State of California with its principal place of business at 7711 Center Avenue, Suite 200, Huntington Beach, California 92647.

18.     Defendant SACRAMENTO AUTO INSURANCE CENTER, INC. ("Sac Auto") is a corporation organizing and existing under the laws of the State of California with its principal place of business at 7711 Center Avenue, Suite 200, Huntington Beach, California 92647.

19.     Defendant MANAGED CARE, INC. d/b/a GALAXY HEALTH NETWORK ("Galaxy") is an unknown business entity with its principal place of business at 2261 Brookhollow Plaza Drive, Suite 106, Arlington, Texas 76006.

20.     Defendant AMERICAN WORKERS INSURANCE SERVICES, INC. ("AWIS") is a Texas corporation with its principal place of business at 10878 Westheimer Rd., Ste. 191 Houston, TX 77042.

21.     Defendant JOHN DOE 1 is an unknown business entity.

4

**JURISDICTION AND VENUE**

22.    This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

23.    This Court has personal specific jurisdiction over Defendants because Defendants targeted consumers with their advertisements in California, including to Plaintiff, who is a resident of San Mateo County, California.  Defendants solicited business for their products and services and did transact sales in California.  Defendants' advertisements, solicitations, and sales contracts executed with residents of California, such as Plaintiff, are the subject of this exact dispute from which this lawsuit arises.

24.    This Court also has general jurisdiction over Defendants All Star, Freeway, and Sac Auto because their principal places of business are in California.

25.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the wrongful conduct giving rise to this case substantially occurred in this District.

**COMMON FACTUAL ALLEGATIONS**

26.    Defendants All Star, Freeway, and Sac Auto sell auto insurance and/or auto warranty plans and contracts.

27.    Defendant Freeway and Sac Auto are authorized sales agents for Defendant All Star's insurance products.

28.    Defendant Galaxy is a health provider network.

29.    Defendant AWIS is an authorized sales agent for Galaxy and sells policies that enable access to the healthcare networks they maintain.

30.    Defendant AWIS, Freeway and Sac Auto hired Defendant John Doe 1 to market their products and services.

SECOND AMENDED COMPLAINT

31.     Defendant John Doe 1 performed robocalling on behalf of the products and services of All Star, Freeway, Sac Auto, Galaxy, and AWIS.

32.     To increase sales and decrease their advertising costs, Defendants amassed the names and phone numbers for thousands of consumers, from unknown sources, and then placed unsolicited calls offering various types of insurance services.

33.     When Class members interrupted what they were doing to answer their phones expecting to hear from a real person, they instead got a bait and switch by being played an artificial or prerecorded voice for the purposes of soliciting Defendants' products.

34.     Defendants respected Class members' time and privacy so little that they did not even hire a real person to call them—they used a machine to play prerecorded messages to thousands of consumers at once.

35.     Defendants hoped that if enough people purchased their product as a result of the robocalls, it would justify the annoyance experienced by the recipients of the calls as the "cost of doing business."

36.     Defendants failed to obtain prior express written consent from consumers, including Plaintiff and Class members, before making calls to their phones using an artificial or prerecorded voice.

**FACTS SPECIFIC TO PLAINTIFF JOANNA CHENG**

37.     On or about April 2, 2019, Plaintiff received a call at 4:53 p.m. from John Doe 1 on her cell phone number ending in 9347.

38.     The caller ID from John Doe 1 displayed as +1 (650) 202-1953.

6

SECOND AMENDED COMPLAINT



39.     Upon information and belief, this (650) area code was falsified and/or spoofed because Defendants do not operate call centers in this area code.

40.     John Doe 1 placed the robocall to Plaintiff in order to solicit customers on behalf of the other Defendants.

41.     When Plaintiff answered the phone, Plaintiff heard an artificial or prerecorded voice message asking her if she was interested in all types of insurance, including auto and health insurance policies.

42.     The voice asked, "Are you interested in health insurance?"

43.     Next, it asked, "Are you interested in auto insurance?"

44.     In order to identify the caller, Plaintiff asked to speak to a representative.

45.     Plaintiff was connected with a live representative who solicited Plaintiff for auto insurance.

46.     Plaintiff asked the representative who was calling, and the representative provided the email addresses comments@insuranceservices.pro and customservice@insuranceservices.pro.

47.     The representative identified himself as being from "Freeway Insurance" and also provided the call back number 800-960-0036.

48.     Upon information and belief, Freeway Insurance was Defendant Freeway.

SECOND AMENDED COMPLAINT

3:19-cv-02352-JD

49.     Plaintiff spent 37 minutes on the phone with the live representative, but the call was terminated because the live agent representative hung up on her.

| 04/02/2019 | 04:53PM | 650.202.1953 | Incoming, CL | 37 | 0.00 |

50.     To confirm the products being sold pursuant to the robocalls, on April 3, 2019, Plaintiff's attorney called back the number Plaintiff had been provided, 800-960-0036.

51.     In order to identify the products being marketed, Plaintiff's attorney asked to purchase an auto policy.

52.     Plaintiff's attorney received an email from "Rodrigo Bravo from Sacramento Auto InsCtr, Inc. DBA Cost-U-Less Insurance Ctr."



53.     The email included a contract to purchase auto insurance from Defendant Sac Auto.

54.     The contract stated that the insurance product being sold was called "Stonewood Prime" Insurance.

8

4/3/2019                                    EZbuy Online Insurance

**ST-U-LESS**
INSURANCE CENTER

**Steps to complete**

*Information Acknowledgment* ▸  *Disclosures* ▸  *Payment Authorization* ▸  *Application Complete*

### EZBuy Information Acknowledgment

⊗ **Premium Information**

| | |
|---|---|
| Insurance Company | Stonewood Prime |
| Payment Plan | 8.33% Down 11 Pay (Due In 20 Days) |
| Cost of Insurance (including fees) | $1,102.53 |
| Installments | $104.70 |
| Term | 12 |

55.     According to the website of Stonewood Prime Insurance, stonewoodinsurance.com, the insurance is underwritten by Defendant All Star.

56.     From April 26, 2019 to April 30, 2019, pursuant to the same robocalling campaign, Plaintiff received at least four more calls from John Doe 1 on Plaintiff's cell phone ending in 9347.

57.     The calls were placed from (650) 946-3278.

58.     Upon information and belief, these calls were from a falsified and/or spoofed phone number because Defendants do not have call center in Los Altos, CA, as the caller ID indicated.



SECOND AMENDED COMPLAINT

3:19-cv-02352-JD

59.    On April 30, 2019, Plaintiff was talking on the phone when her phone alerted her by playing the Call Waiting noise that there was another incoming call from (650) 946-3278.

| 04/30/2019 | 01:32PM | 650.946.3278 | Call Wait | CW | 49 | 0.00 |

60.    Upon answering that call, Plaintiff heard an artificial or prerecorded voice message advertising lower rates on health insurance.

61.    In order to identify the caller, Plaintiff asked to speak to a representative.

62.    A live representative named Christopher came on the line and solicited Plaintiff for a health insurance plan or policy.

63.    Christopher said that he was a representative for First Health Network, which is owned by Aetna.

64.    Upon information and belief, Christopher was an authorized sales representative of Defendant First Health.

65.    Plaintiff and Christopher discussed options for two different health plans, one that included dental coverage and one that did not.

66.    Christopher quoted $421.45 per month for medical only plan and $520.46 per month for medical and dental coverage.

67.    Plaintiff requested to see a copy of the health policy being offered.

68.    Plaintiff received a copy of the health policy from Defendant AWIS.

SECOND AMENDED COMPLAINT

3:19-cv-02352-JD



69.     The AWIS policy said "Your plan allows you to enjoy great savings through First Health Network and First Access Wrap Networks, which can significantly reduce your out-of-pocket expenses. First Health is a Brand Name of Defendant First Health Group Corp., an indirect whollyowned [sic] subsidiary of Aetna, Inc."

> Your plan allows you to enjoy great savings through First Health Network and First Access Wrap Networks, which can significantly reduce your out-of-pocket expenses. First Health is a brand name of First Health Group Corp., an indirect whollyowned subsidiary of Aetna, Inc. Out-of-network services are not covered by your plan, therefore, it is important to choose an in-network provider. To locate an in-network provider visit: www.findprovidersnow.com

70.     The policy also said that Members would also receive access to Defendant Galaxy Health Network, one of the largest PPO's in the nation.

SECOND AMENDED COMPLAINT

3:19-cv-02352-JD

## Discount Healthcare Services

## Galaxy Health Network

Members receive access to one of the largest
Preferred Provider Organization (PPO) for discount
medical services in the nation.

71.     Plaintiff never consented to receive calls from Defendants.  Plaintiff had no relationship with Defendants prior to these phone calls and never requested that Defendants contact her in any manner, let alone pursuant to robocalls.

### AGENCY ALLEGATIONS

72.     Prior to conducting discovery in this litigation, due to the anonymous nature of robocalling, Plaintiff has no way to confirm the exact identify of the person who called her phone.

73.     However, for the purposes of TCPA liability, Plaintiff is not expected to know this information at the pleading stage.

74.     The May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id*. at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id*. at 6593 (¶ 46).

75.     Even if All Star, Freeway, Sac Auto, Galaxy, and AWIS did not personally initiate the TCPA-violating calls, they are liable if they took steps to cause the calls to be made, or if the calls were made pursuant to their apparent authority and/or ratification.

SECOND AMENDED COMPLAINT

3:19-cv-02352-JD

76.     Defendants' integration of robocalling into its sales transactions was so fast and seamless that prospects could be cold called out of the blue and a new contract for Defendants' health or auto policies could be written and executed by the parties in under 60 minutes flat.

77.     Defendants closely controlled the criteria and qualification questions needed before a live customer could be generated, transferred to an agent, and then to be sold Defendants' health or auto policies.

78.     All Star permitted and authorized its agents, including Freeway and Sac Auto, and their agent, John Doe 1, to bind themselves to contracts using the parameters and criteria they established in quickly writing these contracts pursuant to robocalls.

79.     Galaxy permitted and authorized its agents, including AWIS, and its agent, John Doe 1, to bind themselves to contracts using the parameters and criteria they established in quickly writing these contracts pursuant to robocalls and telemarketing.

80.     Accordingly, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

81.     In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id*. (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

82.     On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective

SECOND AMENDED COMPLAINT

3:19-cv-02352-JD

remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief.  As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

83.     More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

61.     The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id*. at 6587 n. 107.

62.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

[A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd at 6592 (¶ 46).

63.     By hiring a company to make calls on its behalf, the authorized sales agents of All Star, Freeway, Sac Auto, Galaxy, and AWIS "manifest[ed] assent to" Defendant John Doe 1's illegal robocalling "that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

64.     All Star, Freeway, Sac Auto, Galaxy, and AWIS knowingly and actively accepted business that originated through the illegal telemarketing calls from Defendant John Doe 1.

## CLASS ALLEGATIONS

65.     **Class Definitions**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(1), 23(b)(2) and/or 23(b)(3) on behalf of Plaintiff and the subclasses (individually, a "Subclass") defined as follows:

> **TCPA Subclass**.  All persons in the United States who: (1) from the last 4 years to present (2) received at least one telephone call from John Doe 1; (3) on his or her cellular or residential telephone; (4) that was called and played an artificial or prerecorded voice message; (5) for the purpose of selling Defendants' products or services; (6) where Defendants did not have any record of prior express written consent to place such call at the time it was made.

> **CLRA Subclass**.  All residents of California who: (1) from the last 4 years to present (2) received at least one telephone call from John Doe 1 on his or her phone; (3) for the purpose of promoting Defendants' products or services; (4) where Defendants did not first introduce the identity and address or phone number of the organization calling using a natural, non-prerecorded voice and obtain permission from the recipient to play the prerecorded message; (5) where the call was unsolicited and not requested by the recipient; and (6) where Defendants did not have an established business or customer relationship with the call recipient.

66.     The following people are excluded from the Subclasses: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly

15

SECOND AMENDED COMPLAINT

3:19-cv-02352-JD

execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

67.     **Numerosity**: The exact number of the Subclass members is unknown and not available to Plaintiff, but it is clear that individual joinder is impracticable. On information and belief, Defendants placed telephone calls to thousands of consumers who fall into the definition of the Subclasses. Members of the Subclasses can be identified through Defendants' records.

68.     **Typicality**: Plaintiff's claims are typical of the claims of other members of the Subclass, in that Plaintiff and the Subclass members sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited telephone calls.

69.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Subclasses. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Subclasses. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Subclasses and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Subclass. Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

70.     **Policies Generally Applicable to the Subclasses**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Subclasses as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Subclass members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' practices challenged herein apply to and affect the Subclass

SECOND AMENDED COMPLAINT

3:19-cv-02352-JD

members uniformly, and Plaintiff's challenge of those practices hinge on Defendants' conduct with respect to the Subclasses as a whole, not on facts or law applicable only to Plaintiff.

71.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Subclasses, and those questions predominate over any questions that may affect individual members of the Subclasses. Common questions for the Class include, but are not necessarily limited to the following:

i.      Whether Defendants' conduct violated the TCPA;

ii.     Whether Defendants' conduct violated the TCPA *willingly* and/or *knowingly*;

iii.    Whether Defendants' conduct violated Cal. Civ. Code §1770(a)(22)(A);

iv.     Whether the calls played an artificial or prerecorded voice recordings to thousands of cell phones;

v.      Whether the calls used a natural voice to introduce the organization including the organization's name or phone prior to playing any prerecorded voice message;

vi.     Whether Defendants obtained prior written consent prior to contacting any members of the Subclasses;

vii.    Whether members of the Subclasses are entitled to treble damages based on the knowingness or willfulness of Defendants' conduct.

72.     **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by the individual members of the Subclasses will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Subclasses to obtain effective relief from Defendants' misconduct. Even if

17

members of the Subclasses could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

### FIRST CAUSE OF ACTION
Violation of 47 U.S.C. § 227
Telephone Consumer Protection Act
Against all Defendants
**(On behalf of Plaintiff and the TCPA Subclass)**

73.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

74.     On behalf of All Star, Freeway, Sac Auto, Galaxy, and AWIS, John Doe 1 placed phone calls to Plaintiff's and the Subclass members' cellular and/or residential phones.

75.     Defendants did not have express written consent prior to calling Plaintiff and the Subclass.

76.     Defendants' calls were made for the purpose of soliciting Defendants' auto and health insurance policies.

77.     The calls played an artificial or prerecorded voice message to the cell phone and/or residential phones of Plaintiff and the Subclass members as proscribed by 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(b)(1)(B).

78.     As a result of its unlawful conduct, Defendants repeatedly invaded Plaintiff's and the Subclass's personal privacy, causing them to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling them to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop their illegal calling campaign.

SECOND AMENDED COMPLAINT

3:19-cv-02352-JD

1

2

79.     Defendants made the violating calls "*willfully*" and/or "*knowingly*" under 47 U.S.C. § 227(b)(3)(C).

3

4

5

6

80.     If the court finds that Defendants' violations were *willful* and/or *knowing*, the Court may exercise its discretion to increase damages awarded up to a maximum of $1500 per violating call under 47 U.S.C. § 227(b)(3)(C).

7

**PRAYER FOR RELIEF**

8

9

**WHEREFORE**, Plaintiff JOANNA CHENG, individually and on behalf of the Subclass, prays for the following relief:

10

11

12

A.     An order certifying the TCPA Subclass as defined above, appointing Plaintiff JOANNA CHENG as the Subclass representative and appointing Plaintiff's counsel as Subclass Counsel;

13

14

B.     An order declaring that Defendants' actions, as set out above, violate the TCPA;

15

16

C.     An order declaring that Defendants' actions, as set out above, violate the TCPA *willfully* and *knowingly*;

17

18

19

D.     An injunction requiring Defendants to cease all unlawful calls without first obtaining the call recipients' prior express written consent to receive such calls, and otherwise protecting interests of the Subclass;

20

21

E.     An award of statutory and punitive damages;

22

23

F.     An award of reasonable attorneys' fees and costs; and

G.     Such other and further relief that the Court deems reasonable and just.

24

25

26

27

28

SECOND AMENDED COMPLAINT

3:19-cv-02352-JD

## SECOND CAUSE OF ACTION
Violation of Cal. Civ. Code §1770(a)(22)(A)
California Consumers Legal Remedies Act
Against all Defendants
**(On behalf of Plaintiff and the CLRA Subclass)**

81.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

82.     Cal. Civ. Code § 1750, et seq., California's Consumer Legal Remedies Act, prohibits a specific list of unfair and deceptive business practices.  ("CLRA").

83.     Cal. Civ. Code § 1770(a)(22)(A) prohibits "[d]isseminating an unsolicited prerecorded message by telephone without an unrecorded, natural voice first informing the person answering the telephone of the name of the caller or the organization being represented, the address or the telephone number of the caller, and without first obtaining the consent of that person to listen to the prerecorded message."

84.     Defendant John Doe 1, on behalf of All Star, Freeway, Sac Auto, Galaxy, and AWIS, repeatedly violated Cal. Civ. Code § 1770(a)(22)(A) by playing an artificial or prerecorded voice message to Plaintiff's cell phone on multiple occasions as referenced herein without first asking for her consent with a natural voice.

85.     As a proximate result of Defendants' violation of Civil Code § 1770, plaintiff has suffered and continues to suffer damages in an amount not yet ascertained, to be proven at trial.

86.     Plaintiff has been harmed in multiple ways, by being tricked into answering a robocall by a spoofed area code, wasting time on the calls trying to identify the responsible parties, rendering Plaintiff's own phone useless during the repeated robocalling, incurring the costs of purchasing the aforementioned robocall-solicited products to identify the Defendant companies (because they would not otherwise reveal their identities), and the costs of having to pursue legal remedies to redress these violations, such as the costs of filing this suit and attorney's fees

SECOND AMENDED COMPLAINT

3:19-cv-02352-JD

87.     Plaintiff and the Members of the Subclass are entitled to injunctive relief, actual and punitive damages, costs and attorney's fees.  Cal Civ. Code §§ 1780(a)(2), (a)(4) and (d).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff JOANNA CHENG, individually and on behalf of the Subclass, prays for the following relief:

A.     An order certifying the CLRA Subclass as defined above, appointing Plaintiff JOANNA CHENG as the Subclass representative and appointing Plaintiff's counsel as Subclass Counsel;

B.     An order declaring that Defendants' actions, as set out above, violate Cal. Civ. Code §1770(a)(22)(A).

C.     An injunction requiring Defendants to cease all unlawful calls without first obtaining the call recipients' prior express written consent to receive such calls, and otherwise protecting interests of the Subclass;

D.     An award of actual and punitive damages;

E.     An award of reasonable attorneys' fees and costs; and

F.     Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.


Dated: October 1, 2019              Respectfully submitted,

                                    JOANNA CHENG, individually and on
                                    behalf of all others similarly situated,


                                    By:  /s/ Mark L. Javitch            .

21

SECOND AMENDED COMPLAINT

3:19-cv-02352-JD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Mark L. Javitch (California SBN 323729)
480 S. Ellsworth Ave.
San Mateo CA 94401
Tel: 650-781-8000
Fax: 650-648-0705

*Attorney for Plaintiff*
*and the Putative Class*

SECOND AMENDED COMPLAINT